Fay Lewis BERMAN, Executrix of the Estate of Joseph Emile Berman, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 72J–69.

United States District Court,
S. D. Mississippi,
Jackson Division.

Jan. 24, 1973.

James P. Knight, Jr., Jackson, Miss., for plaintiff.

L. A. Smith, III, Asst. U. S. Atty., Jackson, Miss., for defendant.

WILLIAM HAROLD COX, District Judge.

This is a suit for the recovery of inheritance taxes erroneously collected from the estate of this decedent. Initially, there were two questions of law to be decided by the Court, but one of those questions has been resolved by the parties. The case is here on stipulation as to facts and fair inferences which the Court may draw from such admitted facts.

The suit involves questions as to whether or not the decedent had a determinable interest in the proceeds of five life insurance policies on the life of the insured to entitle the proceeds thereof to marital deduction treatment in the calculation of inheritance taxes due the United States. It was determined by the parties that the Provident Mutual Life Insurance Company, Policy No. 5929 48, in the amount of $2,025.35 was not entitled to marital deduction treatment and consideration, but that the other four policies appearing as Exhibit 2, Exhibit 3, Exhibit 4 and Exhibit 5 were entitled to such treatment and consideration, and that the contention of the United States in this suit to the contrary is erroneous, and that the plaintiff is entitled to a refund on such items with interest accordingly.

The unresolved question remaining for decision by the Court is as to the validity and consequent effectiveness of the assignment by the decedent of a $30,000.00 flight insurance policy on his life payable to his son. Joseph Emile Berman was killed during a commercial airplane flight near Hendersonville, North Carolina on July 19, 1967. Be-

fore boarding the plane at Jackson, for one dollar he purchased from Fox-Everett Insurance Agency at the airport a $30,000.00 flight insurance policy on his life; and assigned across the face of such policy, for a good consideration, the life ownership of this policy to his son who is designated as beneficiary therein. This policy of insurance on delivery by the insurer to the insured was immediately assigned to Robert L. Berman, son of the insured. Should the proceeds of this life insurance and disability policy be includable in the estate of the decedent for tax purposes is the paramount question.[1] Was this assignment executed in contemplation of death to avoid taxes and as a substitute for a testamentary disposition of such property? This Court is of the view from the facts agreed upon, and inescapable inferences deducible therefrom that this assignment under such circumstances present in this record, as a matter of fact, was not made in contemplation of death, and was not prompted by any thought of death, or with the purpose of avoiding taxes, or as a substitute for testamentary disposition of such property, or other motive associated with death, for the reasons presently stated.

In limine, the Court is of the opinion and so finds that the plaintiff is the duly appointed, qualified and acting executrix of the estate of Joseph Emile Berman, deceased; that the plaintiff has paid to the United States the taxes in controversy, and has filed a claim for the refund thereof, and that such claim has been denied; and that all conditions precedent to the right to bring this suit

have been duly met and complied with by the plaintiff; and that this Court has full jurisdiction of the parties and the subject matter to hear and decide this case under 28 U.S.C.A. § 1346(a).

The insured decedent was sixty-seven years of age at the time of the purchase of the policy of insurance, and was in excellent health with a life expectancy of 11.73 years. He had no pressing problems of any kind and was fully enjoying a happy and contented life at the time. Significantly, and of importance in this connection is the fact that the insured purchased on this occasion the smallest policy written for the smallest consideration available to the public therefor. The Court finds under the facts and circumstances here present that this insured had no thought or intention of self destruction, and had no possible premonition of his impending fate. The insurer's chances of being called upon to pay this policy was thirty thousand to one against such loss. These policies are so routinely issued at this airport that in most instances they are obtainable from a machine. Even though the insured was a lawyer, he positively did not have his death in mind as a factor in any consideration of anything done by him in this case. The existence of the policy and the contemporaneous assignment thereof had no causal connection, or even relationship with insured's tragic death. It was purely a jest of fate that a private plane should enter the flight pattern of this commercial airliner over Hendersonville, North Carolina at this time by reason of human error,

---

1. 26 U.S.C., 1964 ed., § 2035 provides: Transactions in contemplation of death. "(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) Application of general rule.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full considera-

tion in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death."

or inadvertence of others beyond his control.

■ Joseph Emile Berman was enroute to a convention in West Virginia and had a round trip ticket with his wife and daughter who expected to join him in New York, and return to Jackson after such convention. The decedent had made this same trip before on this same route successfully, and was on this occasion retracing his former steps to this convention. This policy of insurance involved a relatively negligible part of his estate. He had already made plans to conduct lay services at his synagogue for succeeding months. This policy not only contained death benefits, but likewise provided for disabilities occasioned by such an action in flight on this trip at anytime between its inception at Jackson, and the arrival of the decedent back in Jackson some days hence. The policy itself was duly and legally assigned and delivered to the assignee for a *good* consideration on the date of the policy. At all times thereafter, the assignee had it within his power to assign the proceeds of such policy, or any part thereof to others. At all times thereafter, the assignee had the right as the owner of the life interest in said policy as well as beneficiary to change the beneficiary if he wished to another. This assignment was made within the proscribed period of three years, and is deemed ineffectual to accomplish the purpose intended, and the burden of proof is upon the plaintiff to overcome such presumption in this case to entitle the plaintiff to recover.

■ If the decedent had had any thought of death on such occasion, he surely would not have bought the policy or boarded that plane. It simply cannot be said that every purchaser of flight insurance becomes a buyer of such a contract in contemplation of death, and to circumvent a testamentary disposition of the proceeds of such contract as a part of his estate. The proceeds of this particular contract never in truth and in fact, or in law became a part of the estate of this decedent as an asset even under this presumption statute with which we are dealing.[2]

It is the opinion of this Court that the plaintiff is entitled to a judgment here on the marital deduction question involving the policies appearing as Exhibit 2, Exhibit 3, Exhibit 4 and Exhibit 5 to the stipulation; and is entitled to a judgment here against the defendant for all taxes erroneously collected on the $30,000.00 flight insurance policy in suit; together with 6% interest on such amounts from date of receipt thereof until repaid. There will be no assessment of costs in this case.

A judgment accordingly may be presented for entry within five days under the rules of this Court.

2. In Estate of Hilda Beecher Stone v. Commissioner, Tax Court Memo 1972-108, in passing upon the validity of an assignment within the proscribed three years, as to whether or not it was made in contemplation of death, the Court said: " ' * * * (a) The age of the decedent at the time the transfers were made; (b) the decedent's health, as he knew it, at or before the time of the transfers; (c) the interval between the transfers and the decedent's death; (d) the amount of the property transferred in proportion to the amount of property retained; (e) the nature and disposition of the decedent, e. g., whether cheerful or gloomy, sanguine or morbid, optimistic or pessimistic; (f) the existence of a general testamentary scheme of which the transfers were a part; (g) the relationship of the donee or donees to the decedent, i. e., whether they were the natural objects of his bounty; (h) the existence of a long established gift-making policy on the part of the decedent; (i) the existence of a desire on the part of the decedent to escape the burden of managing property by transferring the property to others; (j) the existence of a desire on the part of the decedent to vicariously enjoy the enjoyment by the donees of the property transferred; and (k) the existence of the desire by the decedent of avoiding estate taxes by means of making *inter vivos* transfers of property.' "